IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| OLANREWAJU ODEDEYI | : | CIVIL ACTION |
| | : | |
| v. | : | No. 23-3550 |
| | : | |
| AMERICAN AIRLINES | : | |
| | : | |

**MEMORANDUM**

**Chief Judge Juan R. Sánchez**                                                              **December 13, 2023**

This case is presently before the Court for adjudication of Defendant American Airlines' Motion to Dismiss Count II of the Plaintiff's First Amended Complaint and Plaintiff's Motion for Leave to File a Second Amended Complaint. Because Odedeyi does not allege facts establishing he was embarking or disembarking an aircraft when he purportedly contracted COVID-19 and the Court finds further amendment would be futile, the motion to dismiss shall be granted and the motion to amend denied.

**FACTUAL BACKGROUND**

This action arises out of pro se Plaintiff Olanrewaju Odedeyi's travel on an American Airlines ("American") flight from Montego Bay, Jamaica, to Philadelphia, Pennsylvania in May 2022. Odedeyi flew to Montego Bay on American on April 30, 2022, but on May 5, 2022, American canceled his return flight to Philadelphia, scheduled for the same day. First Am. Compl. ¶ 5, ECF No. 9. Following the cancellation, American rebooked Odedeyi for the same flight the next day and provided bus transportation for him with other passengers to a nearby hotel for lodging overnight. *Id.* ¶¶ 7-9, 22. Odedeyi alleges his pre-departure COVID test was negative and he submitted his negative test result as required for boarding on May 5, 2022. *Id.* ¶ 21.

1

However, a Jane Doe employee of American did not offer Odedeyi an alternative to bus transportation to the hotel, and placed him on a poorly ventilated bus next to other passengers who were unmasked and displaying visible symptoms of COVID-19. *Id*. ¶¶ 25-32, 39. Two days after being exposed to several bus passengers who were sneezing, coughing, and showing symptoms of COVID-19, Odedeyi began experiencing COVID symptoms. *Id.* ¶ 45. He tested positive for the infection four days after this exposure. *Id*. ¶¶ 44-46.

Because Odedeyi allegedly incurred costs and suffered inconvenience from the cancellation of his original return flight and contracted COVID-19 on the hotel bus, he brought this suit alleging a violation of Articles 17 and 19 of the Montreal Convention, a/k/a the "Convention for the Unification of Certain Rules for International Carriage by Air, done at Montreal on May 28, 1999." ICAO Doc. No. 9740 (entered into force on November 4, 2003), *reprinted in* S. Treaty Doc. No. 106-45, 1999 WL 33292734, USCS Montreal Convention. *Id*. ¶¶ 14-18, 45-48, 80. Defendant American moves to dismiss Count II of Odedeyi's First Amended Complaint, which purports to state a claim under Article 17 of the Montreal Convention. Def. Mot. Dismiss, ECF No. 11. Under Article 17, a plaintiff must show his "injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking" to successfully state a claim for violation of Article 17 of the Montreal Convention. Because Odedeyi's First Amended Complaint alleges he contracted the virus on the bus ride, not the plane, American submits Count II must be dismissed for failure to state a viable claim for relief. *Id*. 1, 5-8. In addition to arguing in his Response in Opposition to the Motion to Dismiss that his injury *did* take place during the process of embarking or disembarking, Odedeyi has also filed a Motion for Leave to File a Second Amended Complaint to assert that he was exposed to COVID-19 on the May 6 flight, not the May 5 bus ride. ECF Nos. 12, 13.

**LEGAL STANDARDS**

Under Federal Rule of Civil Procedure 12(b)(6), "[t]he question is 'not whether [the plaintiff] will ultimately prevail, but whether [the] complaint [is] sufficient to cross the federal court's [pleading] threshold," which "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Renfro v. Unisys Corp.*, 671 F.3d 314, 320 (3d Cir. 2011) (quoting *Skinner v. Switzer*, 562 U.S. 521, 530 (3d Cir. 2011). To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pled allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a Rule 12(b)(6) motion, a district court separates the legal and factual elements of the plaintiff's claims. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court must then "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft*, 556 U.S. at 679). Additionally, the court must construe pro se filings liberally. *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Generally, a party may amend a pleading with the court's leave, which "[t]he court should freely give . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). The decision to grant or deny leave to amend is within "the sound discretion of the district court," allowing courts to "forestall strategies that are contrary to both the general spirit of the federal rules and the liberal amendment policy of Rule 15(a)." *Cureton v. NCAA*, 252 F.3d 267, 272 (3d Cir. 2001); *CMR D.N. Corp. v. City of Phila.*, 703 F.3d 612, 630 (3d Cir. 2013) (citation and internal quotation marks omitted). A district court may deny leave to amend when there is undue delay, bad faith, dilatory motive,

3

futility, or prejudice. *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (citation omitted). The Third Circuit has upheld denials of leave to amend where plaintiffs enjoyed multiple prior attempts to amend their complaint, especially where the new complaint contradicted prior pleadings. *See Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 654-55 (3rd Cir. 1998) (upholding denial of leave to amend because "[p]laintiffs have already had ample opportunity to plead their allegations properly and completely"); *Gasoline Sales, Inc. v. Aero Oil Co.*, 39 F.3d 70, 74 (3rd Cir. 1994) (holding it was not an abuse of discretion for the district court to deny leave because plaintiff had had "three attempts at a proper pleading" and plaintiff was "modifying its allegations in hopes of remedying factual deficiencies in its prior pleadings, even to the point of contradicting its prior pleadings."). While contradictions between an original pleading and an amended pleading are not sufficient to warrant denial of amendment when considering a party's first motion for leave to do so, courts in the Eastern District of Pennsylvania have denied leave where the plaintiff "could only correct [the complaint's] deficiency by contradicting that to which he has already sworn" or where the plaintiff sought to abandon a legal theory. *MRO Corp. v. Humana, Inc.*, Civ. No. 16-2881, 2017 U.S. Dist. LEXIS 135506, at *9, n.20 (E.D. Pa. Aug. 23, 2017); *Coletta v. Ocwen Fin. Corp.*, Civ. No. 14-6745, 2015 U.S. Dist. LEXIS 126330, at *5 (E.D. Pa. Sept. 21, 2015);

**DISCUSSION**

This case is a refiling of a case previously filed in this Court, *Odedeyi v. American Airlines*, Case No. 23-cv-1934, in which Odedeyi sought to recover for the same alleged damages based on the same facts pursuant to Articles 17 and 19 of the Montreal Convention. The Montreal Convention is an international agreement that, *inter alia,* amended portions of the Warsaw Convention, which previously governed an airline's liability related to international air transportation. *See, e.g., Air France v. Saks*, 470 U.S. 392, 392 (1985). Article 17 of the Warsaw

4

Convention, as amended by the Montreal Convention ("Article 17"), provides a "carrier is liable for damage sustained in case of death or bodily injury of a passenger upon condition only that the accident which caused the death or injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking." *Id.*

There are three factors primarily relevant to determining liability under Article 17: 1) the "location of the accident," 2) "the activity in which the injured person was engaged," and 3) "the control by defendant of such injured person at the location and during the activity taking place at the time of the accident." *Evangelinos v. Trans World Airlines, Inc.*, 550 F.2d 152, 155 (3d Cir. 1977) (quoting *Day v. Trans World Airlines, Inc.*, 528 F.2d 31 (2d Cir. 1975), cert. denied, 429 U.S. 890 (1976), reh'g denied, 429 U.S. 1124 (1977)). "While control remains at least equally as important as location and activity, it is an integral factor in evaluating both location and activity." *Id.* In *Evangelinos*, the Third Circuit held the plaintiffs were "embarking" in part because plaintiffs were only about 250 meters away from the aircraft, and as such, they were "not located in a 'safe place,' removed from risks now inherent in air transportation." 550 F.2d 152 at 157. Where, however, plaintiffs have been injured at greater distances from the aircraft or departure gate than in *Evangelinos*, courts within and outside the Third Circuit have held they were neither embarking nor disembarking for purposes of Article 17 liability. *See e.g., Brannen v. British Airways PLC*, Civ. No. 1:17-00714, 2017 U.S. Dist. LEXIS 181185, at *13-14 (M.D. Pa. Nov. 1, 2017) (holding plaintiff was not embarking or disembarking where plaintiff was injured on an inter-terminal bus between connecting flights, "in a location that was accessible to other passengers and was not, according to the facts alleged in the complaint, in any type of exclusive area."); *Kantonides v. KLM Royal Dutch Airlines*, 802 F. Supp. 1203, 1211 (D.N.J. 1992) (holding plaintiffs were not in the process of "embarking" under the Montreal Convention where plaintiffs "lacked the proximity to

5

the gate and the immediacy of boarding of the plaintiffs in *Evangelinos*."); *Schmidkunz v. Scandinavian Airlines System*, 628 F.2d 1205, 1207 (9th Cir. 1980) (holding passenger who was still within common passenger area, had not received boarding pass, was not "imminently preparing to board the plane, and was not at the time under the direction of [airline] personnel" was not "embarking"); *Maugnie v. Compagnie Nationale Air France*, 549 F.2d 1256 (9th Cir.), cert. denied 431 U.S. 974, 53 L. Ed. 2d 1072, 97 S. Ct. 2939 (1977) (holding a passenger who was between the departure gate and center of terminal was not disembarking).

*Evangelinos* counsels courts to also consider the nature of a plaintiff's activities at the time of injury to determine whether they were embarking or disembarking. *See Evangelinos*, 550 F.2d at 156; *Day*, 528 F.2d at 33. In *Evangelinos*, the Third Circuit found the plaintiffs were embarking because they "had already completed all the steps necessary to boarding the aircraft except (1) undergoing physical and handbag searches, and (2) physically proceeding from the search area to the aircraft." 550 F.2d at 153-54. Thus, "the plaintiffs had completed virtually all the activities required as a prerequisite to boarding" at the time they were injured by a terrorist attack. *Id.* at 156.

Finally, courts consider whether the plaintiff was under the control of the airline to determine whether the plaintiff was in the process of disembarking or embarking for the purposes of Article 17. *Id.* The *Evangelinos* court reasoned the airline in that case had assumed control of plaintiffs when it announced final boarding and directed the passengers as an identifiable group associated with their flight to stand near the departure gate before they could board. *Id.* The court's conclusion that the airline was exercising control over the passengers at the time of the injury was also supported by the fact that the airline's "service personnel were standing at [the gate], guiding the passengers, and [airline] security personnel were present." *Id.* In contrast, when passengers are free to move "at their own pace and under their own control," courts have found

6

this element does not support the airline's liability under Article 17, even when plaintiffs were following the airline's instructions to reach a connecting flight. *See, e.g., Kantonides*, 802 F. Supp. at 1212; *Brannen*, 2017 U.S. Dist. LEXIS at *15-16 (holding the control element of the *Evangelinos-Day* test was lacking where the alleged injury occurred while plaintiffs were following the airline's instructions about traveling between terminals).

Odedeyi alleges he was injured on a bus heading away from the airport en route to a hotel, and its ridership was not exclusive to passengers from his flight. First Am. Compl., ¶ 25, 30, ECF No. 9. He does not allege that his injury took place on an airplane, near a departure gate, in an airport terminal, or even between airport terminals.[1] The First Amended Complaint also does not allege that the activity he was undertaking while injured—riding a bus to a hotel—was a prerequisite to boarding his flight the next day. Odedeyi was therefore spatially and temporally removed from the aircraft and was not engaged in activity necessary to ensure he either embarked or disembarked from his flight at the time he suffered the alleged injury. *McCarthy v. Northwest*

---

[1] It is noteworthy that in his earlier action before the undersigned, Odedeyi explicitly pled that he was *not* "embarking" or "disembarking" when he contracted COVID-19 on the bus. Instead, in Case No. 23-1934, Odedeyi alleged:

> 57. The Montreal Convention does not preempt Plaintiff's Negligence Claim because an injury on a bus does not qualify as embarking or disembarking. (Brannen v. British Airways PLC (M.D. Pa. 2017) WL 4953856, at *1.).
>
> 58. Odedeyi was not in the course of embarking or disembarking from an aircraft when he was infected by the novel Coronavirus disease (COVID-19) on the shuttle bus.
>
> 59. The bus that transported Odedeyi to the hotel Defendant had booked for any overnight stay was also not exclusively transporting only passengers from the canceled flight.

Third Am. Compl., ECF No. 15, Case No. 23-1934.

*Airlines*, 56 F.3d 313, 317-18 (1st Cir. 1995). And, while Odedeyi may have been following the airline's instructions about getting to the hotel, he does not allege final boarding had been called, security personnel were present, or that the Defendant would not have permitted him to board his flight the next day if he did not ride the bus to the hotel. As such, Odedeyi fails to establish any of the required elements of the *Evangelinos-Day* test and his purported claim against American under Article 17 of the Montreal Convention set forth in Count II of the First Amended Complaint is properly dismissed.

Turning to Odedeyi's Motion for Leave to File a Second Amended Complaint, the Court observes that Odedeyi has made at least seven prior attempts to produce a proper pleading for his claim against American before this Court, excluding his efforts to bring a cause of action in state court. *See, e.g.*, ECF Nos. 9, 14, 16, Case No. 23-1934; ECF Nos. 1, 9, Case No. 23-3550. Indeed, in Case No. 23-1934, Odedeyi amended or attempted to amend his complaint three times before voluntarily dismissing it in July 2023. *See* ECF Nos. 9, 14, 16, Case No. 23-1934. In his initial complaint in this action, Odedeyi alleged he contracted COVID-19 both on the bus ride on May 5 *and* during the May 6 return flight. Compl., ¶¶ 19, 92-93, ECF No. 1-2. It was only after American filed a Motion to Dismiss arguing that two separate, contradicting causes could not simultaneously be the proximate cause of Odedeyi's COVID-19 infection that Odedeyi filed his First Amended Complaint removing the allegation he contracted COVID-19 on the May 6 flight, and instead alleged he contracted the virus only on the May 5 bus ride. First Am. Compl. ¶ 41-44, ECF No. 9.

Odedeyi included with his First Amended Complaint a verification that the allegations in the First Amended Complaint were accurate. First Am. Compl., 13, ECF No. 9. In the instant motion to amend, Odedeyi now alleges he had "by chance" encountered "an individual from the

bus" on Sunday, October 22, 2023, who confirmed that "the persons plaintiff had believed of having Covid-19 on the bus, did not, in fact, have the Covid-19, even though they exhibited symptoms commonly associated with Covid-19." Mot. to Amend ¶ 10. This contention does not cure the pleading deficiency and, as Defendant points out, this would be Odedeyi's ninth attempt to plead a claim against American, and the now-proposed amendments directly contradict Odedeyi's previous allegations. Def.'s Brief in Opp. to Pl.'s Mot. for Leave to File Second Am. Compl. 1, ECF No. 17. By suddenly resurrecting the claim that he contracted COVID-19 on the May 6 flight, and not the bus, Odedeyi directly contradicts his own, prior sworn allegations that he had carefully traced his infection to the *bus* as the singular cause of his infection. Pl.'s First Am. Compl., ¶ 80, ECF No. 9. Because the only way Odedeyi can correct the deficiency in Count II is by contradicting that to which he has already sworn as true, and he has had more than enough opportunities to plead a viable claim under Article 17, the Court finds the motion to amend has been filed in bad faith and would be futile. Accordingly, it is denied.

**CONCLUSION**

Because Odedeyi's alleged injury took place at a location far removed from an aircraft, during an activity which was not part of the boarding process, and outside of the control of Defendant, Odedeyi has not established that he was embarking or disembarking a plane at the time he allegedly contracted COVID-19. As such, Odedeyi has not and cannot plausibly allege a claim for liability against American under Article 17 of the Montreal Convention. The Court therefore grants American's Motion to Dismiss Count II of his First Amended Complaint with prejudice and denies Odedeyi's Motion for Leave to File a Second Amended Complaint.

An appropriate Order follows.

BY THE COURT:

/s/ Juan R. Sánchez
_____
Juan R. Sánchez,          C.J.